1

2

3

4

5

6                              **UNITED STATES DISTRICT COURT**

7                              **EASTERN DISTRICT OF CALIFORNIA**

8    | **U.S. EQUAL EMPLOYMENT** | **CASE NO. 1:17-CV-44 AWI-EPG** |
     | **OPPORTUNITY COMMISSION,** | |
9    | | **ORDER ON DEFENDANTS'** |
     | | **MOTION FOR SUMMARY JUDGMENT** |
10   | **Plaintiff** | |
     | | **ORDER ON PLAINTIFF'S** |
11   | **v.** | **MOTION TO AMEND** |
     | | **THE COMPLAINT** |
12   | **MARQUEZ BROTHERS** | |
     | **INTERNATIONAL, INC.; MARQUEZ** | **ORDER ON DEFENDANTS'** |
13   | **BROTHERS ENTERPRISES, INC.;** | **MOTION FOR SANCTIONS** |
     | **MARQUEZ BROTHERS FOODS, INC.;** | |
14   | **MARQUEZ BROTHERS SOUTHERN** | (Doc. No.'s 46, 48, 49) |
     | **CALIFORNIA, INC.; MARQUEZ** | |
15   | **BROTHERS NEVADA, INC.; MARQUEZ** | |
     | **BROTHERS TEXAS, INC.; and DOES 1** | |
16   | **thru 10,** | |
     | | |
17   | **Defendants** | |

18          The U.S. Equal Employment Opportunity Commission (the "EEOC" or the "Agency") has

19   alleged Defendants engaged in unlawful employment practices by failing to hire multiple persons

20   based on their race. Pertinent to this Order:

21       I.     Defendants seek summary judgment on all claims based on its defenses of
22              laches and unclean hands, and also based on various alleged "jurisdictional"
                issues—that Section 706 of Title VII grants no authority to lodge a "pattern or
23              practice" suit or a class suit after the charging-parties have died, and that the
                EEOC has not conciliated in good faith or pursuant to its own rules;
24       II.    The EEOC has requested leave to amend the complaint, conceding mistakes in
                seeking certain relief and in not stating that two charging parties have died;
25       III.   Defendants seek sanctions against the EEOC under Rule 11, 28 U.S.C. § 1927,
26              and the Court's inherent powers.

27   The Court will (I) grant Defendants' summary judgment motion in part and deny in part, (II) grant

28   the EEOC's motion to amend, and (III) order supplemental briefing on the motion for sanctions.

On October 4, 2010, Alfred Davis filed a charge with the EEOC contending Defendants refused to hire him or otherwise give him an application for employment "because of his race, Black." Doc. No. 59-3, ¶ 1 (Statement of Facts). Mr. Davis charged that Defendants only hire individuals of Hispanic origin, and that he believed other non-Hispanics were treated similarly. *See* Doc. No. 56-5 (Davis Charge of Discrim.). On September 28, 2011, Marvell Moon filed a charge with the EEOC that mirrored Mr. Davis's. Doc. No.'s 59-3, ¶ 2; 56-7 (Moon Charge of Discrim.) (hereinafter, Mr. Davis and Mr. Moon are the "Charging Parties.").

In late 2011, the EEOC opened an investigation into these two charges, interviewing Defendants' human resources manager and attempting to interview a former employee. *See* Doc. No. 56-27 (EEOC's 1/3/2012 Let. to Def's.). Additionally, over the next year and a half, the EEOC sent eight separate letters requesting Defendants turn over documentation concerning their hiring practices—including all applications Defendants received in the few years prior. *See* Doc. No.'s 56-15, -17, -18, -19, -21, -22, -23, and -24 (EEOC's Let's. to Def's). Defendants initially responded by objecting to the EEOC's requests, then by providing some of the requested information a year later, and finally by submitting Mr. Davis's application in April 2013. *See* Doc. No.'s 56-16, -20, and -23 (Def.'s 1/13/12, 11/20/12, and 4/22/13 Let's. to EEOC). After the EEOC received Mr. Davis's application, it noted Defendants had still not submitted all of the requested information, and requested full disclosure; Defendants failed to respond. *See* Doc. No. 56-24 (EEOC's 6/20/13 Let. to Def's).

Between April 2013 and June 2015, the EEOC only contacted Defendants once, in September 2014, about this investigation. Doc. No. 59-3, ¶ 5. In June 2015, the EEOC issued a determination letter under Mr. Davis's charge, finding reasonable cause to believe that Defendants refused to hire Mr. Davis because of his race; the EEOC invited Defendants to "join in a collective effort toward a just resolution of this matter." Doc. No.'s 56-6 (EEOC's 6/30/15 Determ. Let. Davis); 48-2, ¶¶ 9-10 (Madrid Decl. Supp. Defs. Sanctions Mot.). In January 2016, the EEOC

---

[1] These facts are presented in a light most favorable to the nonmoving party, here, the EEOC. *E.E.O.C. v. Boeing Co.,* 577 F.3d 1044, 1049 (9th Cir. 2009).

issued its last conciliation correspondence with Defendants concerning Mr. Davis's charge; Defendants rejected the EEOC's offer, and in March 2017 the EEOC concluded its conciliation efforts in Mr. Davis' case. *See* Doc. No.'s 49-2, at p.14 (EEOC's 3/31/16 Let. Concil. Failure Davis); *Id*. at pp. 4-5 (EEOC's 3/23/18 Let.). Near the end of the conciliation process, the EEOC became aware that Mr. Davis had died a few months prior, in December 2015. Doc. No.'s 59-3, ¶ 34; 49-2, pp. 5-6. The EEOC did not immediately share this information with Defendants. *See Id*.

In August 2016, the EEOC found reasonable cause in Mr. Moon's case, and again invited conciliation with Defendants on the same issues. *See* Doc. No.'s 56-8 and -9 (EEOC's 8/19/16 Let. of Determ. Moon). Conciliation continued through January 10, 2017, concluding without resolution. *See* Doc. No.'s 56-9; 56-29 (EEOC's 1/10/17 Concil. Failure Let. Moon).

On January 11, 2017—almost a year after discovering Mr. Davis's death—the EEOC filed the instant suit, under its own name, alleging Defendants "engaged in a pattern or practice of hiring Hispanics and non-hiring non-Hispanics based on race[,]" in violation of Title VII, § 706(f)(1) and (3); 42 U.S.C. §§ 2000e-5(f)(1) and (3). *See* Doc. No. 5 (1AC). The EEOC sought multiple forms of injunctive relief, and also prayed the Court order Defendants:

> D. . . . to make Alfred Davis and a class of similarly situated non-Hispanic individuals whole by providing compensation for past and future pecuniary losses, including but not limited to back pay, hiring, and where appropriate, front pay; as well as multiple forms of injunctive relief . . . ;
> E. . . . to make Alfred Davis and a class of similarly situated non-Hispanic individuals whole by providing compensation for non-pecuniary losses . . . includ[ing] pain and suffering . . . ;
> F. . . . to pay Alfred Davis and a class of similarly situated non-Hispanic individuals punitive damages . . . .

*See Id*. at p. 14-15. Defendants filed a motion to dismiss based on, among other things, the alleged failure to adequately plead pattern-or-practice discrimination and its defense of laches; the Court denied these requests. *See* Doc. No.'s 17 and 28. The parties pivoted toward settlement, setting a conference schedule before Magistrate Judge Thurston. *See* Doc. No.'s 32 and 34.

In October 2017, the EEOC became aware that Mr. Moon had died almost two-and-a-half years prior, in May 2015. *See* Doc. No.'s 56-4 (Li Decl. at ¶ 2); 49-2, p. 5-6; 59-3, ¶ 34. The EEOC then filed its Rule 26 disclosures, omitting Mr. Davis and Mr. Moon from its witness list.

Doc. No. 59-3, ¶ 30.  In December 2017, Defendants discovered the deaths of the two Charging Parties after conducting an independent investigation.  Doc. No.'s 45, p. 3, ¶¶ 17-24 (Transcript of Proceedings); 59-3 at ¶ 33.  Shortly after, Defendants requested the scheduled settlement conference be vacated, and a summary judgment timetable be instituted; the Magistrate Judge stayed further discovery until the summary judgment proceedings concluded.  *See* Doc. No. 36.

On both March 5 and 12, 2018 Defendants notified the EEOC that they would be seeking sanctions.  *See* Doc. No.'s 55-19 and -20 (Defs.' Let.'s re: Sanctions).  On March 23, the EEOC filed the instant request for leave to amend the 1AC, maintaining it "did not deliberately conceal Davis and Moon's deaths[,]" averring instead these omissions were due to "oversights and mistakes."  *See* Doc. No.'s 46, p. 2, ¶¶ 19-21 (Mot. to Amend); 56-4, p. 3, ¶ 5.  Therein, the EEOC submitted its intention to remove the prayer for money damages on behalf of Mr. Davis and Mr. Moon, but otherwise stated its intent to press forward with the request for injunctive relief and damages on behalf of the "class."  *See* Doc. No. 46.  Defendants responded by filing the instant motions for summary judgment and for sanctions, seeking among other things dismissal of the suit with prejudice.  *See* Doc. No.'s 48 and 49.

## I.     Defendants' summary judgment motion is partially meritorious

### *Legal Standard for Summary Judgment*

Summary judgment is proper when no genuine issue as to any material fact exists, entitling the moving party to judgment as a matter of law.  Rule 56.[2]  A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  *Freecycle Sunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if it might affect the outcome of the suit under the governing law.  *United States v. Kapp*, 564 F.3d 1103, 1114 (9th Cir. 2009).

The party seeking summary judgment bears the initial burden of informing the court of the legal basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[2] Citations to the "Rules" is to the Federal Rules of Civil Procedure, unless otherwise noted.

323 (1986)). Where the moving party will bear the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. *Id.* Where the moving party will not bear the burden of proof on an issue at trial, the movant may prevail by "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)).

If the moving party meets this initial burden, the opposing party must then establish that a genuine issue as to any material fact actually exists. *Id.* at 1103. The opposing party cannot rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial. *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Narayan v. EGL, Inc.*, 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, it must still be rational or reasonable. *Id.* The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact. *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1017 (9th Cir. 2010). A party's "conclusory statement that there is a genuine issue of material fact, without evidentiary support, is insufficient to withstand summary judgment." *Bryant v. Adventist Health Sys./W.*, 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249-50; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2015).

## A. Defendants' "jurisdictional bar" arguments fail

*Parties' Arguments*

In their motion for summary judgment, Defendants argue this suit is "jurisdictionally barred" for two reasons—each due to the fact that both Mr. Davis and Mr. Moon died well before the EEOC's filing of this lawsuit. First, Defendants contend Section 706 of Title VII only grants the EEOC the authority to seek redress on behalf of living charging parties, and the EEOC's Section-706 claim cannot otherwise be supported by a "pattern or practice" rationale because this kind of suit is solely a creature of Section 707. Thus, because the EEOC filed a Section-706 claim seeking relief for a "class" of individuals without living charging parties, no "jurisdiction" exists and therefore judgment in Defendants' favor should issue. Second, Defendants contend the EEOC's conciliation on behalf of the deceased Charging Parties is contrary to the Agency's internal rules, and demonstrates failure to conciliate in good faith. Defendants therefore claim "jurisdiction" is lacking, necessitating summary judgment in their favor.

The EEOC counters that the Charging-Parties' deaths have no effect on the EEOC's ability to bring discrimination claims in its own name on behalf of a "class" of similarly-harmed individuals under Section 706. The Agency maintains its failure to inform Defendants of the Charging Parties' deaths was an inadvertent mistake, and even if the Court determines the EEOC acted in bad faith during conciliation, the sole remedy available to Defendants is for the Court to remand for further conciliation, not to institute an adverse judgment against the EEOC and its "class" members.

*Analysis*

Though the Court is "troubled" (to quote Magistrate Judge Grosjean) about some of the EEOC's actions in this case, the fact remains that Defendants' "jurisdictional" arguments fail under established precedent. Title VII speaks of jurisdiction in terms of delegating to the courts the power to hear EEOC lawsuits generally. *See* 42 U.S.C. § 2000e–5(f)(3) ("Each United States district court . . . shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district court in the State in which the unlawful employment practice is alleged to have been committed . . . ."). Beyond that, Congress has indeed imposed

6

pre-lawsuit duties on the EEOC, which includes a duty to investigate the charge and determine whether "reasonable cause" exists to believe the truth of the charging party's allegations. §2000e–5(b). However, the EEOC's pre-suit conciliation requirement is merely "a precondition to suit" and not "a jurisdictional prerequisite." *E.E.O.C. v. Alia Corp.*, 842 F. Supp. 2d 1243, 1254 (E.D. Cal. 2012) (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ("We do not agree that a condition should be ranked as jurisdictional merely because it promotes important congressional objectives.")). Therefore, Defendants "jurisdictional" argument is without merit.

Insomuch as Defendants are challenging the legal underpinnings of the EEOC's Title VII suit, the Court has already resolved the sufficiency of the EEOC's pleadings in its prior order. *See* Doc. No. 28, at pp. 12-14. The rationale of that Order remains unchanged, even in the face of the Charging Parties' deaths. Once an aggrieved party has filed a charge, Section 706 empowers the EEOC—not the individual charging party—to investigate the accusations, determine whether reasonable cause exists, conciliate with the employer, and, if necessary, file suit to eliminate such unlawful conduct. 42 U.S.C. § 2000e-5(b); *Waffle House v. EEOC*, 534 U.S. 279, 291 (2002) ("[Title VII] clearly makes the EEOC the master of its own case and confers upon the EEOC the authority to determine whether the public interest is served to commit public resources to seek victim-specific relief."); *Gen. Tel.*, 446 U.S. at 326 ("When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination"); *see also Atonio v. Wards Cove Packing Co., Inc.,* 810 F.2d 1477, 1480 (9th Cir. 1987) ("In a class action suit, *commonly known as a 'pattern or practice'* case, plaintiffs typically assert claims both of disparate treatment occasioned by an employer's practices and of disparate impact produced by those practices.") (emphasis added). To be sure, the absence of a charging party from the litigation may inhibit the EEOC's ability to offer relevant evidence, and may affect the specific relief that a court may award to these individuals. *See* Section I.B., *infra*). However, it does not otherwise affect the EEOC's authority to bring the suit, nor the Court's jurisdiction to hear the case).

///

///

7

The same holds true for Defendants' argument that the case is "jurisdictionally barred" due to the EEOC's alleged failure to conciliate in good faith. Under *Mach Mining, LLC v. E.E.O.C.*, the Court may to conduct fact-finding to resolve a dispute concerning conciliation, but the scope of such an inquiry is narrow. 135 S. Ct. 1645, 1656 (2015); 42 U.S.C. § 2000e–5(f)(1). If the Court finds the EEOC has not performed its duty to conciliate, the appropriate remedy would be for the Court to stay the proceedings to permit another attempt at settlement, and not, as Defendants argue, to dismiss the claims with prejudice. *Horne*, 816 F.3d at 1198.

However, the Court does not find such a failure here. The facts, in a light most favorable to the EEOC, demonstrate that the Agency was unaware of Mr. Davis's death until the parties had reached the end of the conciliation process. *See* Doc. No. 59-3, ¶ 34; Doc. No. 49-2, pp. 5-6. Further, after Mr. Davis's conciliation failed, the EEOC again attempted settle this issue by engaging in conciliation procedures under Mr. Moon's charge (whom all believed to be alive at during those negotiations). *See Id.* Since the parties' filings and exhibits clearly demonstrate that conciliation was unsuccessful, it is difficult to imagine that knowledge of the Charging Parties' deaths would have made Defendants *more* likely to settle.[3] The Court is not willing to impute bad faith to the EEOC for the month overlap at the end of Mr. Davis's conciliation, regardless of the EEOC's internal rules regarding case management; this especially where the parties then spent almost another year conciliating Mr. Moon's charge. *Horne*, 816 F.3d at 1198 ("So long as the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission itself, the EEOC may sue the employer."); *EEOC v. Timeless Investments, Inc.* 732 F.Supp.2d 1035, 1052 (E.D. Cal. Aug 13, 2010) ("If an employer is unwilling to engage in any discussion regarding a charge following invitations to conciliate, the obligation to attempt a good faith conciliation will be satisfied.").

Defendants' motion for summary judgment on the issue of whether this case is "jurisdictionally barred" is therefore denied.

[3] The Court notes that, prior to Defendants' filing of this summary judgment motion, the parties appeared to be in settlement posture. *See* Doc. No. 32 (Joint Stipulation to Schedule Settlement Conference). Nothing the Court has said here prohibits the parties from resuming this posture, whether under the umbrella of this suit or in a "remanded" conciliation.

**B.  Laches is applicable to Mr. Davis and Mr. Moon, but does not end the case**

*Parties' Arguments*

Defendants argue summary judgment on their defense of laches is proper due to the Charging Parties' deaths.  Defendants point to the fact that six years passed from when Mr. Davis filed his charge to when the EEOC filed suit in federal court, that both Charging Parties died more than a year prior to the filing of the suit, and that for two years the EEOC hid their deaths from Defendants (and the Court).

The EEOC counters that because Defendants obstructed the Agency's investigation, they are partially responsible for any delay.  The EEOC recognizes that certain relief is unavailable due to the Charging Parties' deaths, and has offered to amend their complaint to remove the prayer for monetary relief for these two, thereby removing any prejudice Defendants might have suffered.  However, the EEOC maintains that a full dismissal of this case would deny just relief to those similarly-harmed "class" members, would prevent the Agency from protecting others in the future if left unaddressed, and would ultimately amount to an unjust windfall for Defendants.

*Analysis*

"A defendant may raise the affirmative defense of laches in defense to suits brought by the EEOC."  *EEOC v. Alioto Fish Co. Ltd.*, 623 F.2d 86 (9th Cir.1980); *see also Occidental Life Ins. Co. of California v. EEOC*, 432 U.S. 355, 373 (1977).  To successfully establish laches, a party must show that (1) there was inexcusable delay in the assertion of a known right and (2) the party asserting laches has been prejudiced.  *O'Donnell v. Vencor Inc.*, 466 F.3d 1104, 1112 (9th Cir. 2006).  Courts look to the cause of the delay to determine whether it is inexcusable.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 954 (9th Cir. 2001); *see also United States v. Gibson Wine Co.*, 2016 WL 1626988, *6 (E.D. Cal. Apr. 25, 2016) (affirmative misconduct supports laches).  "Traditionally, laches is invoked when witnesses have died or evidence has gone stale."  *Melendres v. Arpaio*, 154 F. Supp. 3d 845, 850 (D. Ariz. 2016) (citing *Trustees for Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512, 518 (9th Cir. 1987)).  "Because laches is an equitable remedy, it will not apply if the public has a strong interest in having the suit proceed."  *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 840 (9th

Cir. 2002). "If the elements of a laches defense are met, a court may dismiss the entire case, dismiss certain claims, or restrict the damages available to the plaintiff." *Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, 258 F. Supp. 3d 1114, 1132 (E.D. Cal. 2017); *see also Derek & Constance Lee Corp. v. Kim Seng Co.*, 467 Fed. Appx. 696, 697–98 (9th Cir. 2012) (affirming the district court's use of laches to deny a request for sanctions).

In *EEOC v. Timeless Investments, Inc.*, this Court considered a summary judgment motion on the issue of laches, where the defendant argued for dismissal of all claims brought by the EEOC due to prejudicial delay. 734 F. Supp. 2d 1035, 1066 (E.D. Cal. 2010). There, the EEOC brought an age-discrimination suit, in its own name, based on complaints made by two charging parties. *Id.* at 1068. A four-year gap existed between the time the two charging parties made their initial complaint and the EEOC's filing of the suit. *Id.* The EEOC offered no reasons for the delay, and this Court found that these four years, which included "approximately 26 months of inactivity, were inexcusable." *Id.* at 1068-69. As to prejudice, the Court found the death of one of the charging parties was "highly prejudicial," considering that the deceased's testimony regarding liability and damages, especially mitigation, was "highly important," and the substitute evidence offered by the EEOC (partial W-2 statements, testimony of a witness somewhat familiar with the deceased's work history) was an insufficient replacement. *Id.* at 1072. Thus, finding laches applicable to the deceased-charging-party's claims, the Court precluded all compensatory relief for the deceased. *Id.* However, the Court declined to dismiss the entirety of the EEOC's claim, finding that the evidence from the other charging-party—who was still alive and still available— indicated a question of fact on the age discrimination claim. *Id.* "The public interest is best served by allowing the claim . . . to continue," and so the EEOC could still seek monetary relief for the living charging-party as well as injunctive relief against the defendant. *Id.*

Here, the Court finds the doctrine of laches should similarly apply to certain aspects of the EEOC's claim, as the length of the delay, deaths of Mr. Davis and Mr. Moon, and the EEOC's two-year omission of these facts have highly prejudiced Defendants. As to delay, the record indicates Mr. Davis filed his charge almost eight years ago, and Mr. Moon, seven. *See* Doc. No. 59-3. At first, the EEOC diligently pursued investigating the charges, requesting documents and

interviews with Defendants' employees, only to be met with delay by Defendants. *See Id*. However, a subsequent two-year gap exists where the EEOC virtually ignored this case, until June of 2015 when the Agency issued a determination letter in Mr. Davis's case. *See* Doc. No. 56-6, 59-3. Once conciliation began, the EEOC appears to have diligently sought resolution of the issue, concluding after nine months that no settlement was to be had. *See* Doc. No. 49-2, p. 14. At the conclusion of Mr. Davis's conciliation, the EEOC became aware of his death. *See* Doc. No. 49-2, pp. 5-6. Suffice to say, had the EEOC not waited those two years to begin conciliation (even respecting Defendants' initial procrastination), it could have filed this case sooner and, importantly, could have been well into discovery prior to Mr. Davis's death. The same logic applies to Mr. Moon, perhaps even more egregiously so, for Mr. Moon died around the time the EEOC began conciliation for Mr. Davis. The Court finds this two-year inactivity inexcusable, and finds prejudice in Defendants' inability to depose the Charging Parties—or truly examine any of the evidence from these two. All compensatory relief for Mr. Davis and Mr. Moon is precluded, and all evidence from these two is excluded. *Timeless*, 734 F. Supp. 2d at 1072; *see also Alioto Fish Co.*, 623 F.2d at 89 (finding the district court did not err in granting summary judgment on laches grounds where the delay of 5 years from charge-to-suit was unreasonable, and where defendant was highly prejudiced because many of the witnesses were either unavailable or unable to recall facts about the case).

Similar to *Timeless*, however, the Court will not grant dismiss the case *in toto*. 734 F. Supp. 2d at 1072. The 1AC clearly indicates the EEOC has brought this case on behalf of "[n]umerous non-Hispanic applicants [who] were denied employment based on race," and lists eleven such individuals as other "class" members. *See* Doc. No. 5, at ¶ 14. It appears the testimony from any of these individuals can be used to support the EEOC's claims, and if the EEOC's case is proven, each "class" member would be eligible for monetary relief. *Id*. at ¶ 20. Thus, the appropriate remedy under the Court's laches decision is to preclude all monetary relief solely as to Mr. Davis and Mr. Moon, and exclude all evidence concerning these two, but allow the "class" allegations for the remaining participants (as well as the injunctive relief requested by the EEOC) to proceed. *See Alioto*, 623 F.2d at 89; *Timeless*, 734 F. Supp.2d at 1072.

### C.  Summary judgment on unclean hands is unwarranted

*Parties' Arguments*

Defendants also argue summary judgment on their defense of unclean hands is proper due to the EEOC's choice to hide the Charging Parties' deaths "for years," its choice to pursue remedies "known to be precluded by law," and the Agency's actions misleading "Defendants and this Court into believing the Charging Parties were still alive."  Defendants contend this deception has deprived them of "critical information they needed to settle and adequately prepare their defense to this suit," thereby depriving them of their due process right to a fair trial.

The EEOC counters by first asserting that since this is an action brought "in the public interest" in order to "seek relief for a class of non-Hispanics who were subjected to hiring discrimination by Defendants," the defense of unclean hands should not be applied since it would amount to a windfall for Defendants.  The Agency further denies any attempt to deceive Defendants, contending that its failure to disclose the Charging Parties' deaths was simply a "mistake."  Finally, the EEOC avers that Defendants are not prejudiced by any such mistake, simply because the EEOC has other claimants that support its claim of discriminatory hiring, and since the Agency has asked to withdraw its request for monetary damages on behalf of the two Charging Parties, summary judgment on unclean hands is inappropriate.

*Analysis*

The doctrine of unclean hands "insists that one who seeks equity must come to the court without blemish."  *EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 752 (9th Cir. 1991).  "The doctrine bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted."  *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989); *see also Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) ("[Unclean hands] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.").  The application of the unclean hands doctrine "raises primarily a question of fact."  *Dollar Sys.*, 890 F.2d at 173.  However, the unclean hands doctrine

is not strictly enforced when "to do so would frustrate a substantial public interest." *Recruit*, 939 F.2d at 753, *cf. United States v. Philip Morris Inc.*, 300 F. Supp. 2d 61, 75 (D.D.C. 2004) ("When, as here, the Government acts in the public interest the unclean hands doctrine is unavailable as a matter of law.").

In *Recruit*, the defendants asserted the EEOC violated its duty to keep confidential information divulged during conciliation, and sought dismissal under the unclean-hands doctrine. 939 F.2d at 753. The district court declined, due in large part to its recognition that the EEOC has a duty to serve the public interest—via its administration, interpretation and enforcement of Federal anti-discrimination laws. *Waffle House*, 534 U.S. at 291 ("[Title VII] confers upon the EEOC the authority to determine whether the public interest is served to commit public resources to seek victim-specific relief."); *Gen. Tel.*, 446 U.S. at 326 ("When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination."). On appeal, the Ninth Circuit found no abuse of discretion, stating that "even assuming the EEOC proceeded to court with unclean hands," the district court's refusal to apply the defense "did not offend traditional canons of equitable jurisprudence." *Recruit*, 939 F.2d at 753. "Indeed, a contrary decision holding that the public interest can never override the clean hands doctrine would permit employers to continue unlawful discrimination and leave their victims uncompensated solely because of governmental misconduct unrelated to the validity or substantiality of the discrimination charges." *Id*. at 754.

Here, the Court is indeed troubled by some of the representations made by the EEOC concerning the Charging Parties. However, it is clear that the EEOC has brought this case on behalf of "[n]umerous non-Hispanic applicants [who] were denied employment based on race[,]" and so to grant summary judgment on unclean hands would "punish the innocent victims of discrimination for the errors of the EEOC." *Recruit*, 939 F.2d at 754. The Court has already decided that certain relief for Mr. Davis and Mr. Moon will be precluded (*see* Section I.B. Laches, *supra*), and alongside the Court's grant of fees (Section III, *infra*), the balance of equities in this case will be served without providing Defendants with the windfall they seek. *Recruit*, 939 F.2d at 754. Thus, Defendants' motion for summary judgment on the issue of unclean hands is denied.

## II.    The EEOC is granted leave to amend

*Parties' Arguments*

The EEOC has filed a request to amend the 1AC in order to conform the pleadings to the reality that Mr. Davis and Mr. Moon have died, and to clarify its prayer for the remaining "class" members and for the public interest.  The 2AC would purportedly state that Mr. Davis and Mr. Moon have died, would no longer request pecuniary, non-pecuniary and punitive damages on behalf of these two, and would otherwise make minor "grammatical/stylistic" edits.  Therefore, the EEOC contends that in the interests of justice, and since discovery has not yet commenced, amendment of the complaint is warranted.

Defendants oppose amendment, arguing it is nothing more than an attempt by the EEOC to "sanitize its stunning misconduct" in deliberately concealing the deaths of Mr. Davis and Mr. Moon.  Defendants then proffer many of the same arguments set forth in its motion for summary judgment, which the Court has just resolved.  *See* Section I, *supra*.

*Legal Standard*

When a party may no longer amend a pleading as a matter of right under Rule 15(a)(1), the party must either petition the court for leave to amend or obtain consent from the adverse parties.  Rule 15(a)(2); *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  Rule 15(a)(2) instructs courts to "freely give leave [to amend] when justice so requires."  *C.F. v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 (9th Cir. 2011).  "This policy is to be applied with extreme liberality."  *Id.*  However, a court may deny leave to amend "due to undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of amendment."  *Zucco Partners, LLC v. Digimarc Ltd.*, 552 F.3d 981, 1007 (9th Cir. 2009).  "Absent prejudice, or a strong showing on any of the remaining [considerations], there exists a presumption under Rule 15(a) in favor of granting leave to amend."  *C.F.*, 654 F.3d at 985.  Where a plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the "district court's discretion to deny leave to amend is particularly broad."  *Zucco*, 552 F.3d at 1007.

/ / /

It is no coincidence that the EEOC's motion to amend overlaps with Defendants' motion for summary judgment, for each stems from the deaths of the two Charging Parties. However, the Court notes that all interested parties are now aware of the Charging Parties' deaths, and the Court has precluded monetary relief for these two in its order on Defendants' motion for summary judgment. *See* Section I.B., *supra*. The Court is also under the impression that, moving forward, the EEOC may intend to rely on evidence obtained from the other "class" members, each of whom the Court assumes is still alive and available. The only remaining issue, therefore, appears to be the EEOC's intent to simply match the pleadings to the reality of the unavailable Charging Parties, and to make other stylistic changes to the pleadings. These minor changes will not prejudice Defendants, and so leave to amend is granted. *Zucco*, 552 F.3d at 1007.

### III. *The EEOC acted in bad faith by recklessly filing frivolous pleadings, which needlessly multiplied subsequent proceedings, warranting sanctions*

*Parties' Arguments*

Defendants have moved for sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers, each tied to the EEOC's actions in light of the Charging Parties' deaths. Defendants contend the EEOC was irresponsibly unaware of Mr. Davis's and Mr. Moon's deaths prior to filing suit, "after waiting six years to file," and the Agency concealed its knowledge of their deaths from Defendants once it became aware. Defendants maintain this was done in bad faith—a "willful abuse of judicial process"—so the Agency could "pursue damages it knew could not be recovered." Defendants aver they were prejudiced in having to independently research these facts and file the instant motions, and thus argue sanctions should lie.

The EEOC counters that it did not act in bad faith or otherwise intended to deceive or harass Defendants. Instead, the EEOC argues its failure to disclose the Charging Parties' deaths was a mere mistake, one that has not resulted in any prejudice to Defendants. The EEOC has offered to correct its pleadings to conform to the reality of the deceased Charging Parties, which the EEOC contends are still viable on a "class-wide" basis, and maintains it informed Defendants as much prior to the filing of the motions for summary judgment and for sanctions.

Three primary sources of authority enable courts to sanction parties or their lawyers for improper conduct: (1) Federal Rule of Civil Procedure 11, which applies to signed writings filed with the court, (2) the court's inherent power, and (3) 28 U.S.C. § 1927, which is aimed at penalizing conduct that unreasonably and vexatiously multiplies the proceedings. *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001).

Rule 11 sanctions may lie where an attorney has presented to the court a pleading, written motion, or other paper without making a reasonable inquiry into its legal or factual contentions. Rule 11(b). The rule's fundamental purpose is "to reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers," to avoid delay and unnecessary expense in litigation. *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). When the primary focus of Rule 11 proceedings is the complaint, the court must determine "(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). Under the "safe harbor" provision of Rule 11(c)(2), if the offending party withdraws or corrects the paper, sanctions under Rule 11 cannot lie. *See Sneller v. City of Bainbridge Island*, 606 F.3d 636, 639 (9th Cir. 2010) (citing *Truesdell v. S. Cal. Permanente Med. Group*, 293 F.3d 1146, 1153 (9th Cir. 2002) (noting that amendment of a complaint cures a Rule 11 defect)).

The court also has the inherent power to manage its own proceedings and to "discipline the members of the bar who appear before it." *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995). To impose inherent-power sanctions, a court "must make an explicit finding that counsel's conduct constituted or was tantamount to bad faith." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 648–49 (9th Cir. 1997). Bad faith exists where an attorney has acted recklessly in conjunction with frivolousness, harassment, or an improper purpose. *Fink*, 239 F.3d at 993-94; *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010)); *see also Indiezone, Inc. v. Rooke*, 720 F. App'x 333, 337 (9th Cir. 2017) (indicating bad faith can be shown where an attorney "recklessly or intentionally misleads the court, recklessly raises a frivolous argument result[ing] in the multiplication of the proceedings, [or] recklessly or intentionally

misrepresent[s] facts"). When invoking its inherent power, a court must exercise discretion in fashioning an appropriate sanction. *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).

An attorney who unreasonably and vexatiously "multiplies the proceedings in any case" may also be ordered "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct" under 28 U.S.C § 1927. Section 1927 sanctions are appropriate upon a finding that an attorney "recklessly or intentionally misled the court." *Gibson v. Credit Suisse Grp. Sec. (USA) LLC*, 2018 WL 1958727, at *1 (9th Cir. Apr. 26, 2018) (quoting *Girardi*, 611 F.3d at 1061 ("[W]hat is clear from our case law is that a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, [as is] a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings."); *cf. Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 436 (9th Cir. 1996) ("[S]ection 1927 sanctions must be supported by a finding of subjective bad faith, [which] is present when an attorney knowingly or recklessly raises a frivolous argument[.]"). The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but not under § 1927. *Id.* at 435. "[T]he statute . . . is concerned only with limiting the abuse of court processes.'" *Levine v. Millennium Tr. Co., LLC*, 2013 WL 12157580, at *1 (S.D. Cal. Mar. 20, 2013) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980)).

*Analysis*

First, Defendants present a compelling argument as to whether the EEOC filed a legally and factually baseless pleading, without first conducting a reasonable and competent inquiry, as required under Rule 11. *Holgate*, 425 F.3d at 676. Without elaborating further, however, the Court finds Rule 11 sanctions cannot stand here for one simple reason: after Defendants served the Agency with notice of its intent to seek sanctions, the EEOC filed a motion to amend the 1AC to rectify any issues with the pleading. See Doc. No. 46; *Sneller*, 606 F.3d at 639 (finding the "safe harbor" provision of Rule 11 protected offending party from sanctions where the party filed a motion to amend the pleadings within 21 days of service of the sanctions motion).

As to whether sanctions may lie under the Court's inherent power and 28 U.S.C. § 1927, the Court disagrees with the EEOC's assertions that its failure to disclose the Charging Parties'

deaths was a simple mistake. *See* Doc. No. 55. The key indication that a much more culpable intent is at work here lies is this simple fact: in February 2016, the EEOC became aware that Mr. Davis had died, but has otherwise litigated this case as if he were alive. *See* Doc. No.'s 5 (1AC); 20 (EEOC's Opposition to Def's Mot. to Dismiss); 55-2, at ¶¶ 4-5 (Decl. Li).

In the 1AC, filed a year after the Agency's discovery of Mr. Davis's death, the EEOC sought specific relief for Mr. Davis that the Agency should have known was legally unavailable due to his death. *See* 1AC, at p.14-15. Therein, the EEOC prayed the Court order Defendants to make Mr. Davis whole "by providing compensation for past and future pecuniary losses**,** including but not limited to back pay, **hiring**, and where appropriate, **front pay**[,] non-pecuniary losses[, and] **punitive damages** . . . ."). *See Id.* (emphasis added).[4] However, punitive damages are penal and do not survive a claimant's death. *See Timeless*, 734 F. Supp.2d at 1057 (citing *Smith v. Department of Human Servs.*, 876 F.2d 832, 834 (10th Cir. 1989)); *see also Fulk v. Norfolk S. Ry. Co.*, 35 F. Supp. 3d 749, 764 (M.D.N.C. 2014) (collecting cases and dismissing punitive damages under anti-retaliation statute after claimant's death because punitive damages are "plainly penal."); *Hanson v. Atl. Research Corp.*, 2003 WL 430484, at *4 (E.D. Ark. Feb. 14, 2003) ("[Following] federal common law[,] Hanson's claim for punitive damages under the ADA is penal in nature and did not survive his death[, and so] Plaintiff's claims for punitive damages under the ADA will be dismissed with prejudice."); *Equal Employment Opportunity Comm'n v. Deloitte & Touche, LLP*, 2000 WL 1024700, at *7 (S.D.N.Y. July 25, 2000) ("The claim for compensatory damages [under the ADA] survives Mr. Krolak's death; the claim for punitive damages, however, does not."); *Estwick v. U.S. Air Shuttle*, 950 F. Supp. 493, 498 (E.D.N.Y. 1996) ("The punitive damages are plainly penal and must be dismissed under either federal or state law [due to the claimant's death]."); *compare also Small v. Am. Tel. & Tel. Co.*, 759 F. Supp. 1427, 1431 (W.D. Mo. 1991)

---

[4] Title VII generally provides for each these remedies, but is silent as to their availability upon a claimant's death. *See* 42 U.S.C. § 2000e-5. Therefore, "federal common law determines whether a federal claim/cause of action survives the death of a claimant." *Timeless*, 734 F. Supp.2d at 1056 (citing *United States v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir. 1993)). Under federal common law, claims that are remedial in nature survive the claimant's death, while claims that are penal in nature do not. *Id.* at 1057; *see also U.S. ex rel. Harrington v. Sisters of Providence in Oregon*, 209 F. Supp. 2d 1085, 1087 (D. Or. 2002) ("In general, an action is remedial if the recovery compensates an individual for specific harm suffered, and penal if the recovery imposes damages on the defendant for a general wrong to the public.") (citing *U.S. v. Land, Winston County*, 221 F.3d 1194, 1197 (11th Cir. 2000)).

(finding both punitive and compensatory damages under 42 U.S.C. § 1981 survive Plaintiff's death, per Missouri's survivor statute); *with Earvin v. Warner-Jenkinson Co.*, 1995 WL 137437, at *2 (E.D. Mo. Mar. 10, 1995) (finding punitive damages claim abated upon the plaintiff's death, and disagreeing with *Small* on the application of Missouri's survivor statute "because an award of such damages would be inconsistent with federal common law."). Further, the idea that Mr. Davis could be reinstated (i.e. hired) or awarded front pay—after he has died—is absurd on its face. *See Traxler v. Multnomah County*, 596 F.3d 1007, 1009–10 & n. 1 (9th Cir.2010)) ("Front pay is 'money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'") (quoting *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001); *see also Fogg v. Gonzales*, 407 F. Supp. 2d 79, 92 (D.D.C. 2005), *reversed on other grounds* (finding it "highly unlikely" that discharged employee could be reinstated due to his physical inability to work). The outrageousness of the EEOC's prayer in this case is further exacerbated by the fact that the attorney responsible for filing the pleadings, Ms. Anna Park, is the very same attorney who represented the EEOC in *Timeless*—where this very Court held that a charging party's death "makes the remedies of **reinstatement and front pay *unavailable***." 734 F.Supp.2d at 1072 (emphasis added) (citing *Traxler*, 596 F.3d at 1009–10 & n. 1).

Set against this frivolous request for legally-unavailable relief in the 1AC, the EEOC's other actions paint a picture that demonstrate a continuing recklessness in the EEOC's handling of this case. First, the EEOC admits that its request for this relief was an "oversight due to using similar standard language" in its other complaints, which itself further indicates recklessness in pleading. *See Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 875 F.3d 426, 443 (9th Cir. 2017) (affirming district court's sanctions under § 1927 where the offending party had no evidence to support one of its claims and knew the claim was meritless, yet proceeded with litigating it anyway); *Goldmanis v. Insinger*, 679 F. App'x 605, 606 (9th Cir. 2017) ("The court properly concluded that plaintiff knowingly brought a frivolous, time-barred suit in bad faith," justifying inherent-power sanctions). Second, had the Court been aware of Mr. Davis's death during its consideration of Defendants' laches argument in the earlier motion-to-dismiss proceedings, *see* Doc. No. 28, the order denying Defendants' laches averments would have concluded differently.

Simply, the EEOC's reckless omission has caused Defendants to have to reargue its laches argument in its summary judgment motion, which the Court previously denied but has now granted. *See* Section I.B., *supra*; *see also Credit Suisse Grp.*, 2018 WL 1958727, at *1 (upholding sanctions under § 1927 based on the offending party's delay in correcting the record, because this omission unnecessarily multiplied the proceedings by causing opposing counsel to present a flawed and misleading record to the court, which affected the briefing in the case and the court's consideration of the evidence); *Indiezone*, 720 F. App'x at 338 (upholding district court's institution of sanctions per the court's inherent power, where offending attorney had notice his client did not enjoy corporate status—a fact easily verifiable in the public record—but continued to file declarations and motions asserting his client was in fact a corporation). Third, the EEOC's knowledge of Mr. Davis's death at the beginning of this lawsuit colors other of the Agency's choices in this case, including:

- The fact that the 1AC discusses Mr. Davis in the present tense, despite the Agency's knowledge that he was deceased at the time of filing;
- The failure to inform Defendants of Mr. Davis's death—either at the end of the conciliation process for his charge, throughout conciliation under Mr. Moon's charge, or during the Rule 26(f) conference in August 2016;
- The failure to keep appraised of Mr. Moon's status for a two-year period between his death and the EEOC's discovery of this fact in October 2017;
- The fact that the Agency attempted to obtain a settlement on behalf of the Charging Parties without fully apprising Defendants of their deaths.

*See Hubbard v. Plaza Bonita, LP*, 630 F. App'x 681, 683 (9th Cir. 2015) ("Any rational attorney representing a plaintiff in an ADA access case would know that if his client died, the defendants would want to know about it, especially before signing a settlement agreement that promised prospective relief.").

For these reasons, the Court finds Ms. Park's and Mr. Li's reckless assertions of frivolous arguments and reckless misrepresentations of the facts to be done in bad faith—sanctionable under the Court's inherent powers. *Indiezone*, 720 F. App'x at 338. The Court also deems their failure to divulge the fact of Mr. Davis's death during the motion-to-dismiss proceedings needlessly multiplied the number of times the Court needed to consider the laches issue, supporting an award of fees and costs against Mr. Li under 28 U.S.C. § 1927. *In re Girardi*, 611 F.3d at 1061 ("[W]hat

20

is clear from our case law is that a finding that the attorney recklessly or intentionally misled the court is sufficient to impose sanctions under § 1927, [as is] a finding that the attorneys recklessly raised a frivolous argument which resulted in the multiplication of the proceedings.").

The Court will not, however, grant Defendants request to fully dismiss of this case.  As the Court has discussed in Section I, *supra*, the issues raised by the Charging Parties and alleged by the EEOC affect more than just Mr. Davis and Mr. Moon.  *See Thompson v. Jamaica Hosp.*, 2015 WL 3824254, at *4 (S.D.N.Y. June 19, 2015) ("[I]f the disciplined party had a valid claim, dismissal results in injustice to that party and a windfall to its adversary.")  Further, the extended delay present in this dispute does not fall solely on the EEOC's shoulders, for Defendants' early recalcitrance in disclosing information demonstrates an attempt to delay resolution of the EEOC's conciliation and settlement efforts.  *See Kessler v. Superior Care, Inc.*, 127 F.R.D. 513, 524 (N.D. Ill. 1989) (refusing to grant sanctions based on responding party's bad acts where the moving party was guilty of similar conduct).  Finally, the Court accepts the EEOC's representations that the conciliation under Mr. Davis's charge was functionally unsuccessful at the time the Agency discovered his death—as adequately demonstrated by the parties' inability to resolve the same issue during Mr. Moon's conciliation.  *See Id.*  Simply, Defendants seek an undeserved windfall unwarranted at this time.  *See Erickson*, 87 F.3d at 303 (sanction must be appropriately fashioned); *see also Thompson*, 2015 WL 3824254, at *4 (sanction should avoid granting a windfall).

Therefore, in order to compensate Defendants for their time spent arguing a frivolous issue, the Court is inclined to institute monetary sanctions.  28 U.S.C.  § 1927; *Keegan Mgmt. Co.*, 78 F.3d at 436.  The Court will not do so at this time, as Defendants have expressly sought monetary sanctions against a government agency, the EEOC, which the Court cannot grant.[5]

---

[5] Defendants requested sanctions against the EEOC, including monetary sanctions under § 1927.  However, the plain language of § 1927 explicitly allows for an award against *attorneys*, not parties.  *See* 28 U.S.C. § 1927.  Further, the Court is concerned that since the Government has not waived its sovereign immunity under § 1927 (nor, of course under the Court's inherent power), monetary sanctions against the EEOC cannot lie.  *See Perez v. Blue Mountain Farms*, 2015 WL 4723630, at *3 (E.D. Wash. Aug. 10, 2015) ("Blue Mountain concedes that, due to sovereign immunity, it may not seek attorney fees against the Government pursuant to 28 U.S.C. § 1927."); *Alexander v. F.B.I.*, 541 F. Supp. 2d 274, 300 (D.D.C. 2008) (finding no ability to award sanctions against the government agency under § 1927 or the court's inherent authority due to the lack of waiver of sovereign immunity (citing *In re Graham*, 981 F.2d 1135, 1140 (10th Cir. 1992) ("Even if we were to read the [bankruptcy] statute as encompassing awards against the party, we would still require some independent waiver of sovereign immunity in order to apply it against the United States." (internal citations omitted))).

Defendants may submit arguments as to why sanctions should lie against each attorney of record in this case. Defendants should include with this supplemental filing a bill of costs and attorney's fees connected to its needlessly-multiplied efforts: those concerning investigation into the Charging Parties' deaths, as well as to its motions for summary judgment (Doc. No. 49), motion for sanctions (Doc. No. 48), and motion opposing the EEOC's request to amend the petition (Doc. No. 54). *See Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017) ("[T]he costs of obtaining sanctions may be included in a sanctions award under § 1927."). The attorneys named in Defendants' supplemental filing will be granted an opportunity to respond to this submission. *Redding v. ProSight Specialty Mgmt. Co., Inc.*, 692 F. App'x 447 (9th Cir. 2017) ("Appellants received notice from the district court's summary judgment order and NYM's motion for fees and costs. The district court also provided Appellants an opportunity to be heard, permitting briefing on the motion for attorneys' fees and costs and the submission of affidavits.").

### ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendants' summary judgment motion (Doc. No. 49) is GRANTED IN PART AND DENIED IN PART;

2.  Plaintiff EEOC's motion to amend (Doc. No. 46) is GRANTED;

3.  Within 14 days of service of this Order, Defendants shall submit to the Court supplemental briefing on the issue of sanctions (Doc. No. 48) against the individual attorney(s) representing Plaintiff;

4.  Plaintiff's counsel shall then be granted 7 days from the date of Defendant's supplemental briefing to respond to the sanctions issue; and

5.  This case is referred to the Magistrate Judge for further proceedings (aside from the issue of sanctions, which this Court will resolve).

IT IS SO ORDERED.

Dated:  June 26, 2018  

_____
SENIOR  DISTRICT  JUDGE